IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

| | |
|---|---|
| **BRIAN HUDSON,** | ] |
| **Plaintiff,** | ] |
| vs. | ] Case No: |
| **INSURANCE AUTO AUCTIONS, INC.,** | ] Jury Demand |
| **Defendant.** | ] |

## COMPLAINT

Plaintiff Brian Hudson, by and through counsel, brings this Complaint against Defendant Insurance Auto Auctions, Inc. (hereinafter "Defendant" or "IAA") and alleges as follows:

## JURISDICTION & VENUE

1. This action involves the application of the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 *et seq.*

2. This Court has jurisdiction of this action pursuant to 29 U.S.C. § 2617.

3. The claims asserted in this action arose in Davidson County, Nashville, Tennessee; therefore, proper venue for this action lies within the Middle District of Tennessee pursuant to 28 U.S.C. § 1391.

## PARTIES

4. Plaintiff, Brian Hudson, is an adult male individual and citizen of the United States who resides in Sumner County, Tennessee.

5. At all relevant times, Brian Hudson (hereinafter, "Plaintiff") was an employee of IAA within the meaning of the meaning of the Family and Medical Leave Act, 29 U.S.C. § 2611(2)(A).

6. Defendant is a commercial entity and may be served within the limitations set by Tennessee law.

7. At all relevant times, Defendant engaged in commerce or in an industry or activity affecting commerce and employed fifty (50) or more employees for each working day during each of twenty (20) or more calendar workweeks in the current or preceding calendar year and was an "employer" pursuant to 29 U.S.C. § 2611(4)(A) of the FMLA.

## FACTUAL ALLEGATIONS

8. On April 15, 2013, Plaintiff began working for Defendant as a Branch Manager for Defendant's Fayetteville, Arkansas location.

9. As a result of exceptional performance, Plaintiff was promoted and relocated as a Branch Manager for Defendant's Oklahoma City, Oklahoma location.

10. For continued exceptional performance, Plaintiff was again promoted and relocated as a Branch Manager for Defendant's Nashville, Tennessee location.

11. As a Branch Manager, Plaintiff was responsible for general oversight of the Nashville location, including the management of the branch employees, the implementation of the company's policies, and the maintenance of the company's financial growth.

12. Plaintiff was an exemplary employee, only having two (2) disciplinary actions and/or write-ups his entire career with IAA.

13. Plaintiff's first write up was regarding a minimal violation of company policy when he first began working with IAA.

14. Plaintiff's second write-up was prompted by Plaintiff's own admission, where he informed IAA that he briefly neglected a specific aspect of vehicle preparation.

15. IAA had no idea of Plaintiff's conduct requiring discipline until Plaintiff informed them of his own conduct in an effort to provide transparency and efficacy with his branch location.

16. Plaintiff was also recognized by high level management for his great work.

17. In 2020, Plaintiff won IAA's "Branch Manager of the Year" award for excellent performance and branch management.

18. On or during Fall 2020, Plaintiff discovered that his wife was pregnant.

19. On April 20, 2021, Plaintiff requested FMLA leave for August 5, 2021 for his wife's pregnancy, specifically the due date of his future child.

20. Up to this time, Plaintiff had never taken or requested FMLA leave.

21. On April 27, 2021, Plaintiff's supervisor, Greg Leonard, flew into Nashville to conduct an audit for Plaintiff's location.

22. This audit was a "surprise" audit, where Plaintiff had no knowledge beforehand that any sort of inspection would be conducted.

23. In the eight (8) years Plaintiff had been a Branch Manager, Plaintiff was never subjected to a surprise audit.

24. In fact, Plaintiff had only heard of one (1) occasion where Defendant conducted a surprise internal audit in the entirety of his employment.

25. Regardless, Plaintiff welcomed Mr. Leonard's audit, believing his location would provide exceptional results.

26. During this audit, Mr. Leonard mentioned Plaintiff's FMLA request several times.

27. Specifically, Mr. Leonard asked about the details of his FMLA leave and his wife's pregnancy, asking Plaintiff if he really planned on taking FMLA leave.

28. Mr. Leonard also repeatedly asked if Plaintiff really planned on taking "that much time off."

29. Plaintiff affirmed his intent to take FMLA to all of these comments.

30. Before this audit, Plaintiff had made a practice of guaranteeing that all of his vehicles intended for later display were properly wrapped per IAA's policy.

31. During this surprise audit, Mr. Leonard lifted one of these wraps in front of Plaintiff and took a picture of it unwrapped for the audit.

32. Afterward, Plaintiff found out that this audit listed a violation of the vehicle wrapping policy and specifically included that photo of the vehicle that he saw Mr. Leonard unwrap.

33. Plaintiff's location was found to be in exceptional condition despite the nature and conduct of this surprise audit.

34. In early January 2021, Mr. William "Eli" Brown began working for Plaintiff's location as a Yard Manager.

35. Before new hires began at Plaintiff's location, he was always given a "training report" detailing the need for specific training as well as training and professional history.

36. Mr. Brown was the first and only hire that worked at Plaintiff's location who did not have a training report upon hire.

37. Throughout Plaintiff's employment, Plaintiff kept receiving feedback that Mr. Brown was exceptionally aggressive to other employees.

38. Among other issues, Plaintiff also expressed frustration to Mr. Brown about being continuously late and leaving early.

39. Around this time, Mr. Brown requested that IAA allow him to donate certain leftover items from repossessed or misplaced vehicles.

40. IAA granted Mr. Brown the ability to donate these leftover items, requiring that he catalog the items donated as well as donation receipts.

41. Plaintiff was informed by an employee of a pattern of missing donation items and other items in the repossessed vehicles.

42. Afterward, Plaintiff conducted some investigation into the cause of these missing donation items.

43. Plaintiff reviewed the security footage at his branch, finding that Mr. Brown was stealing these donations.

44. After attempting to work out these issues with Mr. Brown to no avail, Plaintiff reported these issues to IAA's Human Resources ("HR") Department on June 1, 2021, along with a complaint and the aforementioned security footage.

45. During IAA's HR Department's investigation, Mr. Brown was temporarily suspended.

46. Afterward, IAA's HR Department did not follow up Plaintiff's concerns with any sort of further disciplinary action or attempt to address these issues with Plaintiff in any way.

47. Mr. Brown's friend, Mr. Kirollos Abaskharoun, did not show up for work, nor indicate that he would be missing work, both on June 2, 2021, and June 3, 2021.

48. Upon information and belief, Mr. Abaskharoun was in contact with an HR representative after Mr. Brown was suspended.

49. Upon returning to work on June 4, 2021, Mr. Abaskharoun physically threatened Plaintiff in the breakroom.

50. That same day, Plaintiff called the HR Department to inform them of Mr. Abaskhoun's threat.

51. While on the phone, IAA's HR Department told Plaintiff to hold onto the phone while they called Mr. Abaskharoun to leave the premises.

52. Mr. Abaskharoun caused a scene upon his exit, yelling at Plaintiff and accusing him of "setting him up."

53. Despite being the victim of the threat of physical violence, Plaintiff was informed that he was suspended with pay because the HR Department needed to conduct further investigation.

54. Plaintiff inquired about the HR investigation and any personal testimony he could provide to aid the investigation.

55. Plaintiff was told not to discuss anything with the HR Department at this time and was not allowed to communicate with the HR Department.

56. Upon information and belief, IAA's HR Department did not interview, question, or otherwise communicate with any of the office staff during Plaintiff's suspension and while conducting their investigation of the June 4, 2021 incident.

57. On June 15, 2021, Plaintiff was informed that his employment was terminated.

58. Defendant did not provide cause for Plaintiff's termination.

59. Plaintiff was terminated less than two (2) months after requesting leave under the Family and Medical Leave Act.

60. Defendant retaliated against Plaintiff for requesting leave under the FMLA to take care of his wife after her delivery.

61. Plaintiff was never approved FMLA leave.

### COUNT I – VIOLATION OF FAMILY AND MEDICAL LEAVE ACT
### (RETALIATION)

62. Plaintiff re-alleges and incorporates herein the foregoing paragraphs.

63. Plaintiff alleges Defendant qualifies as an "employer" as defined in the FMLA, 29 U.S.C. § 2611(4) and employed over fifty (50) or more employees within a seventy-five (75) mile radius from the location in which the Plaintiff worked.

64. Plaintiff alleges he was an "eligible employee" as defined in the FMLA, 29 U.S.C. § 2611(2), as he had been employed continuously by Defendant for over a twelve-month period and worked at least 1,250 hours of service in the prior twelve-month period.

65. Defendant retaliated against Plaintiff after he exercised her right of entitlement to leave under the FMLA, pursuant to 29 U.S.C. § 2615(a).

66. Defendant is responsible and liable under the FMLA, 29 U.S.C. § 2617(a).

67. Defendant in failing to restore Plaintiff to his position as well as terminating his employment after taking FMLA leave, willfully violated the retaliation provision of the FMLA, 29 U.S.C. § 2615.

68. As a result, Plaintiff is entitled to recover his damages, including lost wages and benefits, liquidated damages, attorneys' fees, costs, interest, reinstatement, and front pay.

**WHEREFORE**, Plaintiff requests this court enter judgment in favor of the Plaintiff and against Defendant, for:

(1) all amounts of wages Plaintiff should have received under federal law but for Defendant's willful violation of his rights, plus an equal amount in liquidated damages pursuant to the Family and Medical Leave Act, 29 U.S.C. § 2617(a)(1)(A);

(2) all amounts of front pay to be determined by a jury;

(3) all reasonable attorney's fees, costs and interest pursuant to state and federal law; and

(4) any such other legal or equitable relief as may be appropriate or to which he may be entitled under state and federal law.

Respectfully Submitted,

**THE EMPLOYMENT & CONSUMER LAW GROUP**

**/s/ CULLEN D. HAMELIN**_____
**G. BRANDON HALL, BPR No. 034027**
**CULLEN HAMELIN, BPR No. 037317**
1720 West End Ave., STE 402,
Nashville, TN 37203
(615) 850-0632

*Attorneys for Plaintiff*