IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| BRIAN HUDSON, | ) |
|     Plaintiff, | ) NO. 3:21-cv-00779 |
| v. | ) JUDGE RICHARDSON |
| INSURANCE AUTO AUCTIONS, INC., INSURANCE AUTO AUCTIONS TENNESSEE, LLC, | ) |
|     Defendants. | |

### MEMORANDUM OPINION

Pending before the Court is Defendants' Motion to Dismiss (Doc. No. 14, "Motion"), supported by a Memorandum in Support (Doc. No. 15). Plaintiff responded in opposition (Doc. No. 17, "Response"), and Defendants replied (Doc. No. 20, "Reply"). For the following reasons, Defendants' Motion will be denied.

### BACKGROUND[1]

In 2013, Plaintiff began working for Defendant IAA as a Branch Manager for Defendant Insurance Auto Auctions, Inc.'s ("IAA") Fayetteville, Arkansas location. (Doc. No. 15 at ¶ 10). In 2015, Plaintiff received a promotion and relocated to Defendant IAA's Oklahoma City, Oklahoma location. (*Id.* at ¶ 11). In 2018, Plaintiff received another promotion and relocated to Defendants'[2] Nashville, Tennessee location. (*Id.* at ¶ 12).

---

[1] The facts in this section are taken from the Amended Complaint (Doc. No. 11) and are taken as true for the purposes of this Motion.

[2] The relationship between IAA and Defendant Insurance Auto Auctions Tennessee, LLC ("IAAT") is not clear from the Complaint. (One is tempted both to assume, for multiple reasons, that they were associated in some formal way and to speculate as to the nature of that association, but the Court declines to so assume or speculate). Throughout the Complaint Plaintiff alleges that he was employed by "Defendants" without making any distinction between the two.

During Fall 2021, Plaintiff's wife became pregnant. (*Id*. at ¶ 29). On April 16, 2021, Plaintiff reached out Defendants' Human Resources ("HR") manager inquiring about applying for FMLA leave for the birth of his child.[3] (*Id*. at ¶ 30). On April 20, 2021, the HR manager emailed Plaintiff an executed Notice of Eligibility and Right and Responsibilities under the Family and Medical Leave Act form. (*Id*. at ¶ 33). According to "Section 1- Notice of Eligibility" of the form, Plaintiff was eligible for FMLA leave. (*Id*. at ¶ 34). Plaintiff thereafter submitted his executed FMLA certification to Defendants' HR manager. (*Id*. at ¶ 36).

Plaintiff sent an email to his immediate supervisor, Greg Leonard, regional manager for Defendant IAA, informing him of his FMLA leave request for 12 weeks of leave. (*Id*. at ¶ 14, 37-40). Shortly after this email, Plaintiff was informed by Mr. Leonard that his FMLA request would be approved. (*Id*. at ¶ 41). The day after learning of Plaintiff's FMLA request, Mr. Leonard flew into Nashville to conduct a "surprise" audit of Plaintiff's location. (*Id*. at ¶ 44-45). Plaintiff had been a branch manager for eight years and had never been subjected to a surprise audit before. (*Id*. at ¶ 46). In fact, Plaintiff had heard of only one occasion where Defendants conducted a surprise internal audit in the entirety of his employment. (*Id*. at ¶ 47). During this audit, Mr. Leonard mentioned Plaintiff's FMLA request several times. (*Id*. at ¶ 49). Specifically, Mr. Leonard asked about the details of his FMLA leave and his wife's pregnancy, sarcastically asking Plaintiff if he "really planned" on taking FMLA leave. (*Id*. at ¶ 50). Mr. Leonard also repeatedly asked whether Plaintiff really planned on taking "that much time off." (*Id*. at ¶ 51). In response to all of these comments, Plaintiff affirmed his intent to take FMLA leave. (*Id*. at ¶ 52). Based on the tone of the questions, Plaintiff believed that Mr. Leonard was mocking him because he (a man) was taking FMLA leave to take care for his newborn. (*Id*. at ¶ 53). During this conversation, Mr. Leonard also

---

[3] Defendant IAAT did not have an HR Department and Defendant IAA was responsible for handling all HR matters for Defendant IAAT from their corporate headquarters in Chicago. (*Id*. at ¶ 16).

asked whether Plaintiff's wife was having pregnancy complications. (*Id*. at ¶ 54). Plaintiff interpreted Mr. Leonard's questions about "are you really planning on taking FMLA leave" as an indicia that Mr. Leonard thought Plaintiff did not need to take off since Plaintiff's wife would be able to care for the newborn. (*Id*. at ¶ 55).

Before this surprise audit, Plaintiff had made a practice of guaranteeing that all vehicles at his branch that were intended for later display were properly wrapped per IAA's policy. (*Id*. at ¶ 56). During this surprise audit, Mr. Leonard lifted one of these wraps in front of Plaintiff and took a picture of the unwrapped portion of the vehicle for the audit. (*Id*. at ¶ 57). Afterward, Plaintiff found out this audit listed a violation of the vehicle wrapping policy and specifically included the photo of the vehicle that he saw Mr. Leonard unwrap. (*Id*. at ¶ 58). It became clear to Plaintiff that Mr. Leonard was attempting to create a paper trail to terminate his employment. (*Id*. at ¶ 59).

On June 4, 2021, Plaintiff received a verbal threat of violence from a fellow employee, and Plaintiff reported the threat to Defendants' HR Department. (*Id*. at ¶¶ 77-78). Despite being the victim of the threat of physical violence, Plaintiff was informed that he was suspended with pay because the HR Department needed to conduct further investigation. (*Id*. at ¶ 81). IAA's HR Department did not interview, question, or otherwise communicate with any of the office staff during Plaintiff's suspension or the pendency of their investigation of the June 4, 2021 incident. (*Id*. at ¶ 85). On June 15, 2021, Plaintiff was informed that his employment was terminated. (*Id*. at ¶ 86). Defendant did not provide cause for Plaintiff's termination, which occurred less than two months after Plaintiff requested leave under the FMLA and less than two months before his twelve (12) weeks of FMLA was to begin. (*Id*. at ¶¶ 87-89).

On October 11, 2021, Plaintiff filed this lawsuit against Defendants, asserting one count: Family Medical Leave Act ("FMLA") retaliation (Count I). (Doc. No. 1). On November 19, 2021,

Plaintiff amended his complaint and added (as part of Count I) a claim of FMLA interference and (as Count II) a claim of gender discrimination in violation of the Tennessee Human Rights Act ("THRA") (Tenn. Code Ann. § 4-24-101). (Doc. No. 11, "Amended Complaint"). Notably, the Amended Complaint had no attachments, which is to say that it did not have attached any exhibits that could have been considered part of the Amended Complaint for purposes of considering the Motion.

Via the Motion, Defendants have moved to dismiss all counts, and this matter is now ripe for review.

## LEGAL STANDARD

For purposes of a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must take all of the factual allegations in the complaint as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Id*. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id*. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Id*. at 679. A legal conclusion, including one couched as a factual allegation, need not be accepted as true on a motion to dismiss, nor are mere recitations of the elements of a cause of action sufficient. *Id*.; *Fritz v. Charter Township of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010), *cited in Abriq v. Hall*, 295 F. Supp. 3d 874, 877 (M.D. Tenn. 2018). Moreover, factual allegations that are merely *consistent* with the defendant's liability do not satisfy

the claimant's burden, as mere consistency does not establish *plausibility* of entitlement to relief even if it supports the *possibility* of relief. *Iqbal*, 556 U.S. at 678.

In determining whether a complaint is sufficient under the standards of *Iqbal* and its predecessor and complementary case, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), it may be appropriate to "begin [the] analysis by identifying the allegations in the complaint that are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 680. This can be crucial, as no such allegations count toward the plaintiff's goal of reaching plausibility of relief. To reiterate, such allegations include "bare assertions," formulaic recitation of the elements, and "conclusory" or "bold" allegations. *Id*. at 681. The question is whether the remaining allegations – factual allegations, *i.e.*, allegations of factual matter – plausibly suggest an entitlement to relief. *Id*. If not, the pleading fails to meet the standard of Federal Rule of Civil Procedure 8 and thus must be dismissed pursuant to Rule 12(b)(6). *Id*. at 683.

On a Rule 12(b)(6) motion to dismiss, "[t]he moving party has the burden of proving that no claim exists." *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross and Blue Shield,* 552 F.3d 430, 433 (6th Cir. 2008). That is not to say that the movant has some *evidentiary* burden; as should be clear from the discussion above, evidence (as opposed to *allegations* as construed in light of any allowable matters outside the pleadings) is not involved on a Rule 12(b)(6) motion. The movant's burden, rather, is a burden of *explanation*; since the movant is the one seeking dismissal, it is the one that bears the burden of explaining—with whatever degree of thoroughness is required under the circumstances—why dismissal is appropriate for failure to state a claim.

## ANALYSIS

Via the Motion, Defendants argue that Plaintiff's FMLA claim and THRA claim should be dismissed for failure to state a claim pursuant to Rule 12(b)(6). The Court will review Defendants' arguments in turn.

### I. FMLA

Defendants argue that Plaintiff's FMLA claims should be dismissed because "Plaintiff is not an 'eligible employee' within the meaning of the FMLA," and therefore he "had no rights under the Act [FMLA] and, therefore, cannot sustain a claim [under the] FMLA." (Doc. No. 15 at 1). Defendants contend that Plaintiff is not an eligible employee "because neither IAA or IAA Tennessee, combined, employed fifty (50) or more employees within a seventy-five (75) mile radius of Plaintiff's former worksite." (*Id*. at 1-2). In support of its argument, Defendants attach to their Motion the Declaration of Betsy Murton-Mendoza, IAA's Vice President of Human Resources. (Doc. No. 15-1, "Declaration"). Via the Declaration, Ms. Murton-Mendoza avers that "there were far fewer than 50 employees within the requisite radius and, therefore, there can be no dispute that Plaintiff does not meet the definition of an 'eligible employee' under the FMLA." (Doc. No. 15 at 5).

The argument raised by Defendants would require the Court to look beyond the allegations within the Amended Complaint and consider the Declaration. As a general rule, courts do not look to matters outside the operative complaint when considering motions to dismiss under Rule 12(b)(6).[4] In fact, the Federal Rules of Civil Procedure provide that if a court intends to consider matters outside the pleadings when ruling on a Rule 12(b)(6) motion, "the motion shall be treated

---

[4] Exhibits attached to a complaint typically are considered part of the complaint and thus can be considered when considering a motion to dismiss under Rule 12(b)(6), but as noted above that principle is irrelevant here because the Amended Complaint had no attachments.

as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Fed. R. Civ. P. 12(b). True, when a document is referred to in the pleadings and is integral to the claims, it may (even if not attached to the complaint) be considered on a Rule 12(b)(6) motion to dismiss without converting the motion into one for summary judgment. *Doe v. Ohio State Univ.*, 219 F.Supp.3d 645, 652-53 (S.D. Ohio 2016); *Blanch v. Trans Union, LLC*, 333 F. Supp. 3d 789, 791-92 (M.D. Tenn. 2018). But the Declaration, obviously having been prepared specifically in response to the Amended Complaint—and obviously being antithetical to the Amended Complaint—of course is not referred to in Plaintiff's Amended Complaint. Moreover, the (alleged) facts from the Declaration relied on by Defendants are contested by Plaintiff in its Response, (Doc. No. 17 at 5-6), so it is not as if the Court could somehow seek to justify treating them as though they were included in the Amended Complaint on the grounds that they are conceded by Plaintiff anyway.

Therefore, in order to decide the FMLA issue, the Court would be obliged to convert the Motion into one for summary judgment. However, the Court is of the opinion that it would not be in the best interest of the parties to convert Defendants' Motion at this juncture, for two reasons. First, Plaintiff has not had the opportunity to conduct discovery on the issue, and in any event, disputes whether the Declaration indeed establishes that Plaintiff is not an eligible employee. (*See* Doc. No. 17 at 5 ("Defendants' motion to dismiss for insufficient numerosity is premature without affording the Plaintiff opportunity to undergo discovery.")). Second, the Court is loath to entertain more than one summary judgment motion from Defendants, and if Defendants' Motion (as converted) were to be denied, Defendants well might wish the Court had held off on deciding a

summary judgment motion until Defendants had had the opportunity to consider (and present as appropriate) potential additional grounds for summary judgment.

Accordingly, the Motion remains a motion to dismiss, to be considered without reference to the Declaration. And because the Motion presents no argument for dismissal of Plaintiff's FMLA claim that is not wholly dependent on the Declaration, the Motion will be denied.

## II. THRA

Plaintiff alleges that Defendants violated the THRA, which provides a state remedy for gender discrimination. Tenn. Code Ann. § 4-21-101, *et seq*. The statute states "[i]t is a discriminatory practice for an employer to: (1) Fail or refuse to hire or discharge any person or otherwise to discriminate against an individual with respect to compensation, terms, conditions or privileges of employment because of such individual's race, creed, color, religion, sex, age or national origin . . ." Tenn. Code Ann. § 4-21-401(a)(1). Though this is a state discrimination law, courts apply the same principles as they would to a claim brought under Title VII or 42 U.S.C. § 1981. *See e.g., Campbell v. Fla. Steel Corp*., 919 S.W.2d 26, 31 (Tenn. 1996) ("The stated purpose and intent of the Tennessee Act is to provide for execution within Tennessee of the policies embodied in the federal civil rights laws. Accordingly, our analysis of the issues in this appeal is the same under both the Tennessee Human Rights Act and Title VII of the Federal Civil Rights Act." (internal citations omitted)); *Pendleton v. Bob Frensley Chrysler Jeep Dodge Ram, Inc*., No. 3:14 C 02325, 2016 WL 2927983, at *3 (M.D. Tenn. May 19, 2016) (noting that only one analysis should be conducted for Title VII, 42 U.S.C. § 1981, and the THRA).[5]

---

[5] "Though [the THRA] is a state discrimination law, courts apply the same principles as they would to a claim brought under Title VII." *Jordan v. Mathews Nissan, Inc.*, 539 F. Supp. 3d 848, 863 n.15 (M.D. Tenn. 2021). "It is true that the THRA is broader than Title VII in some respects," *id.* (citation omitted), but not in any respect relevant to the analysis necessary to resolve the instant Motion.

Moreover, to survive a Rule 12(b)(6) motion, Plaintiff need only satisfy the plausibility requirement. The Sixth Circuit has explained before in regard to a discrimination claim:

> [T]he Supreme Court established a "plausibility" standard in *Twombly* and *Iqbal* for assessing whether a complaint's factual allegations support its legal conclusions, and that standard applies to causation in discrimination claims ... Thus, although the Amended Complaint need not present "detailed factual allegations," it must allege sufficient "factual content" from which a court, informed by its "judicial experience and common sense," could "draw the reasonable inference," *Iqbal*, 556 U.S. at 678, 679, 129 S. Ct. 1937, that [Defendant] "discriminate[d] against [Keys] with respect to [her] compensation, terms, conditions, or privileges of employment, because of [her] race, color, religion, sex, or national origin." . . . According to the Supreme Court, "plausibility" occupies that wide space between "possibility" and "probability." *Iqbal*, 556 U.S. at 678, 129 S. Ct. 1937. If a reasonable court can draw the necessary inference from the factual material stated in the complaint, the plausibility standard has been satisfied.

*Keys v. Humana, Inc.*, 684 F.3d 605, 610 (6th Cir. 2012) (some internal citations omitted). Thus, a plaintiff will survive a motion to dismiss where a court is able to draw a "reasonable inference of discrimination" from the specific facts alleged (thus rendering the complaint sufficient to "give rise to reasonably founded hope that the discovery process will reveal relevant evidence to support [the plaintiff's] claims."). *James v. Hampton*, 592 F. App'x 449 (6th Cir. 2015).

Here, Plaintiff alleges that his supervisor, Mr. Leonard, during a "surprise audit" (which had not been done in Plaintiff's prior 8-years of employment with Defendants) that occurred one-day post his request for paternity leave, "sarcastically [asked] Plaintiff if he 'really planned' on taking [ ] leave" and he "also repeatedly asked if Plaintiff really planned on taking 'that much time off.'" (Doc. No. 11 at ¶¶ 50, 51). Mr. Leonard also inquired as to whether the time off was needed because Plaintiff's wife was having pregnancy complications. (*Id.* at ¶ 54). "Based on the tone of his questions, Plaintiff believed Mr. Leonard was mocking him for taking FMLA as a man to take care of his newborn." (*Id.* at ¶ 53). "Specifically, Plaintiff interpreted Mr. Leonard's questions about 'are you really planning on taking FMLA leave' as an indicia that [Plaintiff] did not need to

take off since his wife would be able to care for the newborn." (*Id*. at ¶ 55). On June 15, 2021, two months after making the paternity leave request, and two months prior to when his paternity leave was set to start, Plaintiff was informed that his employment was terminated. (*Id*. at ¶ 86-87). Defendant did not provide cause for Plaintiff's termination. (*Id*. at ¶¶ 88-89). Thus, Plaintiff alleges that "Defendants possessed, and outwardly expressed to Plaintiff, gender-based stereotypes toward Plaintiff for taking FMLA as a man to care for his newborn" and their "decision to terminate Plaintiff was founded in this gender-based stereotype." (*Id*. at ¶¶ 104-06).

At this early stage in the litigation, the Court "must construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Wesley v. Campbell*, 779 F.3d 421, 428 (6th Cir. 2015). Doing so, the Court finds that Plaintiff has alleged a plausible claim of gender discrimination. As noted above, the Court must construe the Amended Complaint's allegations, and draw therefrom all reasonable inferences, in Plaintiff's favor. So doing, the Court finds that it is reasonable (even if not mandatory) to infer from the timing of, and comments made during, the surprise audit that it was conducted—and Plaintiff was thereafter terminated—because he asked for 12 weeks of FMLA leave to care for his newborn and Defendants were scornful of males (specifically males) doing such a thing. In other words, it is reasonable to infer that Plaintiff faced these events precisely because he was a male—a male with the temerity (*i.e.*, what Defendants allegedly would have seen as temerity) to ask for FMLA leave—and would not have suffered them had he been a female.

Defendants argue that "Plaintiff is essentially asking the court to find that he has stated a claim for sex discrimination because of how he subjectively 'interpreted' his supervisor's 'tone'[.]" (Doc. No. 15 at 7). According to Defendants, "a supervisor's subjectively perceived 'tone' or alleged 'sarcasm' cannot, standing alone, constitute evidence of sex discrimination."

(*Id*.). Therefore, Defendant argues, Plaintiff has failed to "state a claim for relief that is plausible on its face" based on "his subjective perceptions of his supervisor's state of mind[.]" (*Id*.).

Defendants provide no authority for the proposition that a supervisor's subjectively perceived gender-animose "tone" or alleged "sarcasm" cannot at least *contribute* to a finding that gender discrimination is plausible, and the Court fails to see why it cannot. And to the extent that Defendants' argument is that Plaintiff's complaint fails to state a claim because it *relies exclusively* on the perceived tone and sarcasm, the argument fails for two reasons. First, Defendants do not explain why, under applicable case law, perceived gender-animose tone and sarcasm necessarily is insufficient by itself to render a claim of gender discrimination plausible; perhaps such an explanation would have been persuasive, but Defendants did not provide it. And as noted above, since Defendants are the ones bringing the Motion, it is their burden to adequately explain why it should be granted. Defendants have failed to meet that burden because they have failed to explain why, under applicable law, Plaintiff's (supposedly exclusive) reliance on his supervisor's tone and sarcasm means that Plaintiff's claim of gender discrimination is not plausible.[6] Moreover, this argument fails in any event because in the Complaint, Plaintiff alleges more than Mr. Leonard's "tone or sarcasm" as a basis for finding gender discrimination. Plaintiff also alleges that Plaintiff's location underwent a surprise audit only one day after he requested FMLA leave to care for his newborn. And during that surprise audit, Mr. Leonard created circumstances (by unwrapping a vehicle so that it was in violation of Defendants' wrapping policy and taking a photograph of it) that he would later issue violations to Plaintiff for, in an attempt to create a "paper trial" to terminate Plaintiff. (Doc. No. 11 at 57-59). All of this must be and is taken into account in the

---

[6] More specifically, Defendants have failed to explain why, under applicable law, Plaintiff needs to rely on something other than, or in addition to, his supervisor's alleged tone and sarcasm in order to be credited with alleged facts that raise a "plausible" claim for relief. Conceivably such an argument could have succeeded had Defendant made it, but Defendant did not do so.

Court's assessment of whether Plaintiff has met the plausibility standard—which, the Court has found above, he has.

Thus, the Court rejects Defendants' argument, and Defendants' Motion as to Plaintiff's THRA claim will be denied.

## CONCLUSION

For the above-stated reasons, Defendants' Motion (Doc. No. 14) will be DENIED.

An appropriate order will be entered.

                                            *Eli Richardson*
                                            ELI RICHARDSON
                                            UNITED STATES DISTRICT JUDGE